**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHERYL WHITNUM, | No. 3:18-CV-02137 |
| Plaintiff, | (Judge Brann) |
| v. | |
| THE MEADOWS AT STROUD FOR NURSING AND REHABILITATION, LLC D/B/A THE GARDENS AT STROUD, | |
| Defendant. | |

**MEMORANDUM OPINION**

**DECEMBER 30, 2020**

## I.    BACKGROUND

On October 10, 2018, Plaintiff Sheryl Whitnum filed a four-count complaint against The Meadows at Stroud for Nursing and Rehabilitation, LLC d/b/a The Gardens at Stroud, alleging violations of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act.  Whitnum alleges that she was subject to a hostile work environment and retaliated against by her employer.  Discovery has concluded, and Defendant has filed a motion for summary judgment.

The motion is now ripe for disposition; for the reasons that follow, it is granted in part and denied in part.

## II.    DISCUSSION

### A.    Standard of Review

I begin my analysis with the standard of review which undergirds summary judgment. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."[1] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[3] "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[4] "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[5]

"The inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of

---

[1]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[2]    Fed. R. Civ. P. 56(a).

[3]    *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Celotex*, 477 U.S. at 322).

[4]    *Clark*, 9 F.3d at 326.

[5]    *Id.*

proof that would apply at the trial on the merits."[6]  Thus, "if the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[7] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[8]  "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"[9]  The evidentiary record at trial, by rule, will typically never surpass that which was compiled during the course of discovery.

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[10]  "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may,

---

[6]   *Liberty Lobby, Inc.*, 477 U.S. at 252.
[7]   *Id.*
[8]   *Id.*
[9]   *Id. (quoting Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).
[10]  *Celotex*, 477 U.S. at 323 (internal quotations omitted).

and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[11]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[12]  For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) "citing to particular parts of materials in the record" that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[13]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[14]  Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact

---

[11] *Id.*
[12] *Liberty Lobby*, 477 U.S. at 250.
[13] Fed. R. Civ. P. 56(c)(1).
[14] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003) (Weis, J.).

undisputed for purposes of the motion."[15]  On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[16]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[17]   "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[18]  "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[19]

### B.    Undisputed Facts

With that standard outlining the Court's framework for review, I now turn to the undisputed facts of this matter.

Defendant is a nursing home facility located in East Stroudsburg, Monroe County, Pennsylvania.[20]  Plaintiff was hired by Defendant as an Activities Assistant in October 2010.[21]  Plaintiff's responsibilities as an Activities Assistant included providing recreational activities for residents at the nursing home, by assisting in planning, conducting, evaluating, and participating activity programs

---

[15]  Fed. R. Civ. P. 56(e)(2).
[16]  Fed. R. Civ. P. 56(c)(3).
[17]  *Liberty Lobby*, 477 U.S. at 249.
[18]  *Id.*
[19]  *Id.* at 249–50 (internal citations omitted).
[20]  Doc. 38 at 1.
[21]  *Id.* at 5.

and ensuring a safe environment.[22]  Madeline Gianattasio ("M.G.") is a 92-year old

female resident at the nursing home.[23]  Plaintiff and M.G. were occasionally in the

same space at the nursing home, as required by Plaintiff's job duties.  At some

point, the professional relationship between Plaintiff and M.G. deteriorated, and

M.G. filed a grievance against Plaintiff.[24]  Despite numerous conversations

between Plaintiff and Defendant about issues between Plaintiff and M.G., those

problems were never resolved.[25]  In July 2018, Defendant received a request from

Plaintiff for a leave of absence as well as FMLA leave and approved the request.[26]

On or about July 12, 2018, Plaintiff filed a complaint alleging harassment, by

M.G., on behalf of another employee.  Within one week, Plaintiff received a

written form from Defendant (the parties dispute whether this form constituted a

write-up and an adverse employment action), and Plaintiff's last day working for

Defendant was approximately July 17, 2018.[27]

## C.    Analysis

### 1.    Hostile Work Environment Claim

Title VII makes illegal sexual harassment that is "sufficiently severe or

pervasive to alter the conditions of [the plaintiff's] employment and create an

---

[22]  *Id.*
[23]  *Id.* at 2.
[24]  *Id.* at 6.
[25]  *Id.* at 13-14.
[26]  *Id.* at 17.
[27]  *Id.* at 18.

abusive working environment."[28]  To establish a hostile work environment, a plaintiff must show that "1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability."[29]  The Court must consider the "totality of the circumstances" in determining whether such claims survive.[30]  Employment discrimination claims under the PHRA are generally subject to the same analysis as discrimination claims based on Title VII.  Thus, the Court need only analyze Plaintiff's claims under the pertinent Title VII law.  If summary judgment is proper, or improper, on the merits of the Title VII discrimination claims, the same result would necessarily follow for the PHRA discrimination claims.[31]

Defendant asserts that Plaintiff failed to establish a prima facie case because: (1) she has not shown that she was discriminated because of her sex; (2) she has not produced evidence that the conduct was severe or pervasive; and (3) she has not established vicarious liability.[32]  The Court considers the first two arguments and finds that each independently warrants the grant of summary judgment on this claim.

---

[28]  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).
[29]  *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).
[30]  *Jensen v. Potter*, 435 F.3d 444, 451-52 (3d Cir. 2006) (Alito, J.).
[31]  *See Alcantara v. Aerotek, Inc.*, 2018 WL 3007528 at *14 (M.D. Pa. June 15, 2018).
[32]  *See* Doc. 30-1.

### a.   Plaintiff fails to establish discrimination because of sex.

The Court agrees that Plaintiff has not established that she was discriminated because of sex.  Plaintiff claims that the "evidence shows that M.G. continually sexually harassed Plaintiff because she was sexually attracted to her."[33]  In support of this argument, Plaintiff points to several sources: (1) her own deposition testimony; (2) the deposition testimony of Tara James (Defendant's former employee); (3) a text message from Madeline Wilson (same); and (4) a statement from Tiffany Perna (same).  These sources do not establish a genuine issue of material fact for a number of reasons.

First, Plaintiff's attempt at grossly mischaracterizing Tara James's deposition testimony is poorly-received.  Plaintiff describes that testimony as follows: "Ms. James testified that M.G. frequently touched other women, including Ms. James, by rubbing their thighs."[34]  Plaintiff uses this testimony to support her argument that M.G. sexually harassed Plaintiff, but misquotes James and removes all context from the seven lines she directs the Court to.  First, the word "rub" (or any variant thereof) is never used in the excerpt referred to.  Second, at this point in the deposition, James was explaining that "touch in general was a communication style" for M.G.[35]  According to James, M.G. would touch people

---

[33] Doc. 37 at

[34] Doc. 37 at 5 (emphasis omitted).

[35] Doc. 39-3 at 15-16.

"as a way of connecting."[36]  James was clear that M.G. did not touch her in "the

private area."[37]  Further, James explained that M.G. would hug people often,

specifically pointing out that M.G. would hug a man named Mike Prebich.[38]  This

section of James's deposition provides no support for the theory of sexual

harassment, and Plaintiff's misleading representation of that deposition cannot

create a genuine issue of material fact.

Second, the text message discussion with Madeline Wilson also does not

support the notion that M.G. harassed Plaintiff because she was sexually attracted

to Plaintiff.  The relevant portion of the message exchange reads as follows:

> Plaintiff: Did [M.G.] at The Gardens ever touch you?

> Wilson: Yeah she slapped my butt the one time and after that I tried to distance myself before she could try more.[39]

Plaintiff attempts to use this to establish harassment because of sex, but the

message, on its face, does not support this theory.  First, Defendants correctly note

that this exhibit is not dated.  There is no way for the Court to know when this

message was sent or when this event took place.  That M.G. may have touched

*Wilson* once tells the Court nothing about whether *Plaintiff* was harassed because

of sex.  This message does not even support a theory that Plaintiff was harassed for

any reason.  It supports a finding that M.G. once touched Wilson, but that is largely

---

[36]  *Id.* at 16.
[37]  *Id.*
[38]  *Id.*
[39]  Doc. 36-12.

irrelevant to the inquiry this Court must undertake as to Plaintiff's claim. Accordingly, this message cannot help Plaintiff withstand summary judgment.[40]

Third, Plaintiff's references to her own deposition testimony (including the alleged statement by Tiffany Perna) do not, standing alone, create a genuine dispute of material fact. When considering Plaintiff's self-serving testimony, the Court will weigh whether this "testimony, when juxtaposed with the other evidence, is sufficient for a rational factfinder to credit [it] despite its self-serving nature."[41] Given the inconsistencies between the testimony from Plaintiff and the rest of the evidence, as detailed above, and the lack of detail offered in the deposition testimony Plaintiff points to, the Court finds that Plaintiff's self-serving testimony, *ipse dixit*, is insufficient to create a genuine issue of material fact.[42]

### b. Plaintiff has not shown that any harassment was severe or pervasive.

Even assuming, *arguendo*, that Plaintiff had established harassment on the basis of sex, she has not shown that this alleged harassment was severe or

---

[40] Because I find that, in any event, this evidence does not support the denial of summary judgment, I do not consider whether or not the evidence should be excluded because it was allegedly not produced (based on the arguments raised in the parties' supplemental briefs). The Court will consider the admissibility of such evidence ahead of trial, if necessary.

[41] *Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 549 (E.D. Pa. 2012); *see also McBride v. Am. Substance Abuse Professionals, Inc.*, 917 F. Supp. 2d 419, 426-27 (E.D. Pa. 2013).

[42] *See, e.g.*, *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) ("conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment") (citation omitted); *Irving v. Chester Water Authority*, 439 Fed. Appx. 125, 127 (3d Cir. 2011).

pervasive.  "The threshold for pervasiveness and regularity of discriminatory conduct is high."[43]

Here, the allegations from Plaintiff can be split into two groups; those based on Plaintiff's own deposition testimony, and those based on M.G.'s deposition testimony.  Plaintiff once again misrepresents another person's statements during deposition.  In briefing, Plaintiff claims that "M.G. conceded that she regularly touched Plaintiff.  Specifically, M.G. recounted touching Plaintiff's nose and body while 'praying for her' and on another occasion, 'kicking her in the butt.' (M.G. Dep., p.21, Line 5)."[44]  To be sure, in line 5, M.G. acknowledges that she once "kicked [Plaintiff] in the butt."  It contains nothing else that Plaintiff alleges.  That is the only excerpt of M.G.'s deposition testimony Plaintiff points to.  This alone does not show that there was severe or pervasive harassment because of sex.

Just as important, the testimony Plaintiff directs the Court to from her own deposition also does not support a finding of severity or pervasiveness.  Plaintiff's claim that she was "subjected [] to this treatment continually" is insufficient to withstand summary judgment.  "[G]eneral claims that there were a lot of incidents are insufficient where the plaintiff did not testify about the specifics of the general

---

[43]  *Greer v. Mondelez Global, Inc.*, 590 Fed. Appx. 170, 173 (3d Cir. 2014).

[44]  Doc. 37 at 6 (emphasis omitted).  Furthermore, Plaintiff neglects to include the entirety of the sentence at issue, where M.G. states that this kick occurred right after M.G. was grabbed and kissed by Plaintiff.

claim."[45]  This is the case "even where the plaintiff testified to several specific examples."[46]  I find that the handful of specific instances Plaintiff identifies are not sufficient for a reasonable jury to conclude that any alleged harassment was severe or pervasive, given the conduct allegedly took place over an extended period of time – "nearly two years."[47]  Therefore, Plaintiff has not met her burden as to this prong of the analysis.[48]

## 2.    Constructive Discharge

To assess Plaintiff's claim of constructive discharge, I use "an objective test to determine whether an employee can recover on a claim of constructive discharge...[specifically,] whether a reasonable jury could find that the employer permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign."[49]  "An employee's subjective perception of working conditions does not govern a constructive discharge claim."[50]

---

[45]  *Collins v. Kindred Hospitals East, LLC*, 2016 WL 4264588 (W.D. Pa. Aug. 12, 2016); *see also Dreshman v. Henry Clay Villa*, 733 F.Supp.2d 597, 613 (W.D. Pa. 2010) ("While Plaintiff testified that he was subject to sexual harassment half the time that he worked, when questioned about this estimate at his deposition, he only identified a number of discrete events or incidents of harassing conduct[;] thus, the Court will not credit Plaintiff's unsubstantiated estimation.").

[46]  *Id.*

[47]  Doc. 37 at 6.

[48]  Finally, the Court notes that Plaintiff's reference to the continuing violation theory discussed in *O'Connor v. City of Newark* dealt primarily with the applicability of the statute of limitations in Section 1983 cases.  440 F.3d 125 (3d Cir. 2006).  In any event, it does not salvage Plaintiff's argument.

[49]  *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001).

[50]  *Hanan v. J.J. Haines & Co., Inc.*, 291 F.Supp.3d 640, 646 (M.D. Pa. 2018).

Plaintiff's only argument regarding constructive discharge is that she suffered "constant sexual harassment from M.G.," which went "unabated" by her employer, despite her complaints to her supervisors.[51]  The Court finds that this claim cannot survive summary judgment, for similar reasons as the discrimination claim discussed above.  Plaintiff has not put forth sufficient evidence that her work environment was so unpleasant or difficult that a reasonable person would resign, largely because she has failed to establish that the alleged harassment took place as often as she claims.  The limited number of specific examples in the record – over the course of almost two years – do not support a finding of such an oppressive workplace, and therefore, constructive discharge.  Indeed, Plaintiff's reliance on *Duffy v. Paper Magic Group, Inc.* appears misplaced; in that case, the United States Court of Appeals for the Third Circuit found that the employee was *not* constructively discharged, in part because the situation did "not reach the threshold of intolerable conditions."[52]  Because Plaintiff has not put forward any other theory of constructive discharge, the Court must grant summary judgment on this issue.

### 3.    Retaliation Claim

Plaintiff's next claim addresses retaliation.[53]  A "prima facie case of illegal retaliation requires a showing of (1) protected employee activity; (2) adverse action

---

[51]   Doc. 37 at 18-19.

[52]   *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001).

[53]   Doc. 37 at 14-17.

by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[54]  "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."[55]

Here, Plaintiff has produced enough evidence to survive summary judgment. First, it appears that Plaintiff complained of behavior that she subjectively believed to be harassing.[56]  Plaintiff last reported an alleged incident of harassment in July 2018.  Second, the Court cannot say, as a matter of law, that the written documentation Plaintiff received approximately one week later does not constitute an adverse employment actions.[57]  This is a factual question the Court cannot resolve at the moment.  Finally, the temporal proximity between her reporting the behavior and receiving the written documentation is close enough to support a finding of causal connection.  Summary judgment would therefore be inappropriate on the issue of retaliation.

---

[54]  *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015) (Hardiman, J.) (internal quotation marks omitted).

[55]  *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[56]  In the retaliation context, Plaintiff need not establish that there actually was discrimination, but rather only that she believed there was.  *See Moore v. City of Philadelphia*, 462 F.3d 331 (3d Cir. 2006).

[57]  *See* Doc. 36-10.  The Court considered, for example, the title of the document ("Employee Performance Improvement Notification") and the content thereof.  Additionally, Exhibit 11 is a document titled "Grievance Form," and appears to be filled out by another employee of the Defendant.

## III.   CONCLUSION

Summary judgment is granted as to Plaintiff's discrimination claims under Title VII and the PHRA (Counts 1 and 3).  It is also granted as to Plaintiff's constructive discharge claim, to the extent that this claim is pled under all counts. Summary judgment is denied as to Plaintiff's retaliation claim under Counts 2 and 4.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
United States District Judge
